UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARK ATHERLEY,

    Plaintiff,

v.                                       Case No: 2:17-cv-332-FtM-99CM

UNITEDHEALTHCARE OF
FLORIDA, INC.,

    Defendant.

## ORDER

This matter comes before the Court upon review of Plaintiff Mark Atherley's Motion Regarding Applicable Standard of Review filed on December 22, 2017. Doc. 28. Plaintiff is seeking an order setting the standard of review in this case as *de novo*. Defendant UnitedHealthcare of Florida, Inc. ("United") filed a Response in Opposition to Plaintiff's Motion on January 5, 2018, requesting that the Court apply the arbitrary and capricious standard of review to this case. Doc. 29. For the reasons discussed below, the Court finds the appropriate standard of review for this case is the arbitrary and capricious standard.

I.    **Summary of Background**

This is an action by Plaintiff to enforce rights and seek damages under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA") against United for denying health insurance benefits to which Plaintiff allegedly was entitled under his United group health insurance plan (the "Plan"). Doc. 1 at 7-12. Specifically, Plaintiff seeks the recovery of benefits under 29 U.S.C. § 1132(a)(1)(B),

administrative penalties under 29 U.S.C. §§ 1132(c)(1), 1024(b) and 29 C.F.R. § 2575.502c-1, and attorneys' fees under 29 U.S.C. § 1132(g)(1). *Id.*

Plaintiff had health insurance benefits through the Plan, which was offered by his employer, Southwest Florida Maritime, Inc. ("Southwest"), and administered by United. *Id.* ¶ 7. Plaintiff needed a life-saving liver transplant, without which he was expected to survive only until July 2015. *Id.* ¶ 8. United allegedly authorized a liver transplant for Plaintiff, but the in-network medical provider that United referred him to was either unwilling or unable to perform the procedure before July 2015. *Id.* Plaintiff attempted to find another in-network provider through his United "advocate," but the medical provider suggested by the advocate failed to timely communicate with Plaintiff. *Id.* ¶ 9. Therefore, Plaintiff independently identified a Florida medical provider that could perform the liver transplant—Cleveland Clinic in Weston, FL—and he successfully underwent the procedure in July 2015. *Id.* ¶ 10.

Cleveland Clinic billed United for the liver transplant and associated medical services, but United refused to provide coverage for the procedure. *Id.* ¶ 11. As a result, Plaintiff had to prematurely withdraw from his retirement savings to pay the approximately $290,000 bill. *Id.* Plaintiff's counsel attempted to resolve the issue with United through pre-suit communications, but according to Plaintiff, United's in-house counsel "eventually fell off the map." *Id.* at ¶¶ 18-19, 28-35. Therefore, Plaintiff initiated this action.

II.  Available Standards of Review

Although ERISA does not prescribe a particular standard of review for decisions made by plan administrators or fiduciaries, there are two possible options: (1) the arbitrary and capricious standard, which applies when the benefit plan gives the administrator "discretionary authority to determine eligibility benefits or construe the terms of the plan," or (2) the *de novo* standard, which applies in the absence of such discretionary authority.  *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111, 117-19 (2008); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355-56 (11th Cir. 2011).[1]  The applicable standard of review ultimately impacts the six-step analysis for reviewing an administrator's benefits decision:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

---

[1] There used to be a third possible standard of review—the heightened arbitrary and capricious standard—which applied when the administrator was granted discretion but had a conflict of interest by being responsible for both reviewing and paying claims.  *Compare Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010) *with Buckley v. Metro. Life*, 115 F.3d 936, 939 (11th Cir. 1997).  The Supreme Court called that standard into question, however, in *Glenn*.  554 U.S. at 128.  The Eleventh Circuit recognized the Supreme Court's repudiation of the heightened arbitrary and capricious standard in *Doyle v. Liberty Life Assurance Company of Boston*, 542 F.3d 1352, 1359 (11th Cir. 2008), finding that "the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Id.* at 1360.  Therefore, the sixth step for reviewing an administrator's benefits decision now reflects that an administrator's conflict of interest is merely a factor taken into account during the analysis.  *See Garrett v. Prudential Life Ins. Co. of Am.*, 107 F. Supp. 3d 1255, 1263-64 (M.D. Fla. 2015).

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355; *Garrett*, 107 F. Supp. 3d at 1263-64. At this juncture, however, the only question before the Court is whether the *de novo* standard or the arbitrary and capricious standard is appropriate in this case. For the reasons stated below, the Court finds the arbitrary and capricious standard applicable here.

### III. Analysis

The question of whether the *de novo* standard or the arbitrary and capricious standard applies to United's adverse benefits determination is answered by determining whether the Plan granted discretionary authority to United. The arbitrary and capricious standard of review applies if the administrator has been vested with "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. The benefits plan at issue must explicitly and unambiguously grant the discretionary authority to the administrator, and the Court must consider all of the plan's documents to determine if discretion has been granted. *See Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994);

*Garrett*, 107 F. Supp. 3d at 1268. Language conferring the discretion to construe and interpret the benefits plan's terms, make eligibility or coverage determinations or decide on claims is sufficient to trigger the arbitrary and capricious standard. *See Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 912 (11th Cir. 1997); *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989); *Applegate v. Liberty Life Assurance Co. of Boston*, No. 2:17-cv-130-FtM-99MRM, 2018 WL 1010839, at *2-3 (M.D. Fla. Feb. 22, 2018); *Garrett*, 107 F. Supp. 3d at 1267-68; *Schultz v. Metro. Life Ins. Co.*, 994 F. Supp. 1419, 1421 (M.D. Fla. 1997).

Plaintiff asserts the appropriate standard of review here is *de novo* because the Plan does not provide United with "sole" or "full" discretion. Doc. 28 at 2. Plaintiff contends the Plan's language permitting delegation of claim processing and other functions strips United of its discretion and triggers *de novo* review. *Id.* at 3-5. Plaintiff argues in the alternative that the language in the contract is ambiguous such that the doctrine of *contra proferentem* should be employed to construe the ERISA contract against the drafter, United, and apply the *de novo* standard. *Id.* at 6-7. Plaintiff further claims the "Middle District of Florida Court's non-draconian view as to ERISA discovery should coincide with a non-draconian view of the standard of review," and thus the Court should "adhere to the bigger picture discovery philosophy" by establishing the *de novo* standard of review for this case. *Id.* at 7-9.

Conversely, United asserts the Court should apply the arbitrary and capricious standard of review because the Plan explicitly grants United the discretionary authority to interpret benefits and make factual determinations. Doc. 29 at 2-4.

Defendant further argues that even if the Plan permits United to delegate discretionary authority, no delegation occurred here. *Id.* at 5.

The Court finds the arbitrary and capricious standard appropriate in this case. The Plan contains multiple specific, unambiguous references to United's discretion to interpret the Plan's benefits and terms, make factual determinations related to the Plan and its coverage, and set reimbursement policy. According to Article 6 of the Group Contract between United and Southwest (the "Contract"), the Plan is made up of several documents, including the Contract, the Certificate of Coverage ("Certificate"), the Schedule of Benefits ("Schedule"), and the application of the Enrolling Group, as well as any Amendments, Notices of Change, and Riders. *See* Doc. 26-1 at 6[2] (stating the abovementioned documents "constitute the entire Contract between the parties"), 17 (stating in Certificate that Contract includes, in addition to Certificate, the Schedule, Enrolling Group's application, Riders, and Amendments); *see also* Doc. 26-1 at 3-12, 14-78, 79-99, 100-12, 112-17, 118-36.

The Contract indicates the Certificate and Schedule "describ[e] the Covered Health Services, required Copayments, and the terms, conditions, limitations and exclusions related to coverage." *Id.* at 4. Under the heading "Our Responsibilities" and the subheading "Determine Benefits," the Certificate states:

> We make administrative decisions regarding whether this Benefit plan will pay for any portion of the cost of a health care service you intend to receive or have received. Our decisions are for payment purposes only. We do not make decisions about the kind of care you should or should

---

[2] The Court refers to the page on which the quoted text appears in the Administrative Record filing on CM/ECF, not the pagination included on the individual Plan documents.

not receive. You and your providers must make those treatment decisions.

### *We have the discretion to do the following:*

- Interpret Benefits and other terms, limitations and exclusions set out in this *Certificate*, the *Schedule of Benefits* and any Riders and/or Amendments.

- Make factual determinations relating to Benefits.

We may delegate this discretionary authority to other persons or entities that may provide administrative services for this Benefit plan, such as claims processing. The identity of the service providers and the nature of their services may be changed from time to time in our discretion. In order to receive Benefits, you must cooperate with those service providers.

*Id.* at 21 (emphasis added). In Section 8, which provides the "General Legal Provisions," under a subheading titled "Interpretation of Benefits," the Certificate also states:

We have the ***sole and exclusive discretion*** to do all of the following:

- Interpret Benefits under the Contract.

- Interpret the other terms, conditions, limitations and exclusions set out in the Contract, including this *Certificate*, the *Schedule of Benefits* and any Riders and/or Amendments.

- Make factual determinations related to the Contract and its Benefits.

*Id.* at 66 (emphasis added). Under another subheading in Section 8, "Administrative Services," the Certificate says:

We may, in our sole discretion, arrange for various persons or entities to provide administrative services in regard to the Contract, such as claims processing. The identity of the service providers and the nature of the services they provide may be changed from time to time in our sole discretion. We are not required to give you prior notice of any such change, nor are we required to obtain your approval. You must cooperate with those persons or entities in the performance of their responsibilities.

*Id.* In other relevant parts, the Plan documents say United has "the right to change, interpret, modify, withdraw or add Benefits, or to terminate the Contract, as permitted by law, without [the covered person's] approval," *id.* at 17, and United "develop[s] our reimbursement policy guidelines, in our sole discretion," *id.* at 21. Thus, the Plan expressly and unambiguously gives United the discretionary authority to interpret the benefits, exclusions, and other terms of the Plan, making the arbitrary and capricious standard appropriate in this case.

The fact that the Plan permits United to delegate some of its discretionary authority does not trigger *de novo* review. Plaintiff argues the Plan does not confer "sole" or "full" discretion to United because it permits United to "delegate [its] discretionary authority to other persons or entities that may provide administrative services for this Benefit plan, such as claim[s] processing." Doc. 28 at 4 (quoting Doc. 1-1 at 5); *see also* Doc. 26-1 at 21. But the law does not require, as Plaintiff contends, that the administrator have "sole" or "full" discretion for the arbitrary and capricious standard to apply. *See* Doc 28 at 3-6. In fact, the case that Plaintiff cites in support of its proposition—*Firestone*—never uses the terms "sole" or "full" in relation to discretion. *See* Doc. 28 at 3; *see also generally* 489 U.S. 101. Instead, it merely states, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefits plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See Firestone*, 489 U.S. at 115. Further, the arbitrary and capricious standard has been applied in many other ERISA cases despite the relevant plans

containing similar or identical delegation language.³  Simply put, the administrator does not repudiate its discretion to interpret terms or benefits merely by maintaining the discretion to delegate administrative functions.

Because the Plan expressly and unambiguously grants United the necessary discretion to trigger the arbitrary and capricious standard, Plaintiff's arguments regarding *contra proferentum* and the ERISA discovery principles are inapposite. Therefore, the Court finds the arbitrary and capricious standard appropriate in this case.

ACCORDINGLY, it is hereby

**ORDERED:**

Plaintiff's Motion Regarding Applicable Standard of Review (Doc. 28) is **DENIED**.  For the reasons discussed herein, the Court will apply the arbitrary and capricious standard of review in these proceedings.

**DONE** and **ORDERED** in Fort Myers, Florida on this 3rd day of April, 2018.

CAROL MIRANDO
United States Magistrate Judge

---

³ *See, e.g.*, *Cassanese v. United Healthcare Ins. Co.*, No. 8:08-cv-373-T-26MAP, 2008 WL 4642292, at *3 (M.D. Fla. Oct. 20, 2008) (applying arbitrary and capricious standard despite plan stating that administrator "may delegate this discretionary authority to other persons or entities who provide services in regard to the administration of the Policy"); *Morse LLC v. Beckman Coulter, Inc.*, No. 05-22791CIV-COOKE, 2006 WL 3289193, at *2 (S.D. Fla. July 7, 2006) (applying arbitrary and capricious standard despite plan stating that the administrator "*or its delegates*" would have "full discretion and authority to construe and interpret the terms and provisions of the [p]lan" (emphasis added)).

Copies:
Counsel of record